UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ruth L. Krieger and Quentin E. Krieger,

Plaintiffs,

v.

Atlas Van Lines, Inc., and
Shasta Transfer and Storage, Inc.,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-156 ADM/SRN

---

Jacqueline A. Mrachek, Esq., and David A. Harbeck, Esq., Lapp, Laurie, Libra, Thomson & Stoebner, Minneapolis, MN, appeared for and on behalf of the Plaintiffs.

Clarance E. Hagglund, Esq., Britton D. Weimer, Esq., and William C. Weeding, Esq., Hagglund, Weimer & Speidel, Minneapolis, MN, appeared for and on behalf of the Defendant Shasta Transfer and Storage, Inc.

---

## I. INTRODUCTION

On January 10, 2001, this matter came on for hearing before the undersigned United States District Court Judge pursuant to Defendants' Motion for Summary Judgment [Doc. No. 19]. For the reasons set forth below, the motion is granted as to the state law claims and denied as to the federal Carmack claim.

## II. BACKGROUND

### A. Parties

Plaintiffs are Minnesota residents Ruth and Quentin Krieger ("Kriegers"). The claims against Defendant Atlas Van Lines, Inc. ("Atlas"), have been resolved by settlement. Defendant



FEB 16 2001
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Shasta Transfer and Storage, Inc. ("Shasta") is a California moving company that has held itself out as a local agent of Atlas.

**B. Facts**[1]

In February 1999, the Kriegers decided to relocate to Minnesota and sold their Redding, California home. Ruth Krieger Dep. ("RK Dep.") at 10. Because their new house in Minnesota was not yet ready for occupancy, the Kriegers needed to store their possessions until they could be moved to Minnesota. *Id.* at 18. The Kriegers conducted interviews with possible movers to examine their options. *Id.* at 10, 12-13. Ruth Krieger interviewed Dan Sloan ("Sloan"), co-owner of Shasta, about the move. *Id.* at 11, 54.

The Kriegers requested a cost estimate for their move. *Id.* at 54. Sloan prepared an Atlas Van Lines document entitled "Estimate/Order for Service" ("Estimate") that approximated the costs of the move into storage, time in storage, and the move from storage to Minnesota. *Id.* Ex. 2. Sloan advised Ruth Krieger to purchase the most protection available for their property. *Id.* at 80. She agreed and told Sloan she wanted the highest level of protection possible. Ruth Krieger Aff. ("RK Aff.") ¶ 7. One section of the Estimate, "Valuation Selection," defines "valuation" and contains several blanks with different levels of coverage. RK Dep. Ex. 2. Valuation is the amount of money for which the carrier (Shasta) may be liable to the shipper (the Kriegers) if the items are damaged in transit. *Id.* Although the "valuation selection" section of the form was not filled in, the Estimate's cost appraisal includes a charge of $300 for valuation coverage of $50,000. *Id.* Neither of the Kriegers signed the Estimate. *Id.* Sloan signed the Estimate as an

---

[1]The following facts are stated "in the light most favorable to the nonmoving party." *See Dush v. Appleton Elec. Co.*, 124 F.3d 957, 962-63 (8th Cir. 1997) (citations omitted).

"Atlas Agent." *Id.*

After getting estimates from other companies, the Kriegers selected Shasta to ship their property to Minnesota. *Id.* at 13. On March 9, 1999, Shasta arrived at the Kriegers' California home and loaded their property into a truck. Quentin Krieger Dep. ("QR Dep.") at 13-14. During this process, Shasta created a handwritten "Household Goods Descriptive Inventory" ("Shasta Inventory"). RK Dep. at 72, Ex. 1. After the truck was loaded, a mover presented Ruth Krieger with a blank document entitled "Combined Agreement for Moving Services and Freight Bill" ("Combined Agreement"). *Id.* at 58, Ex. 3. The only items filled in on the form were the origin and destination of the move, the Kriegers' California home address and Shasta's storage facility. *Id.* Ex. 3. The Combined Agreement states that "claims for any lost or damaged goods must be filed with the carrier in writing" within 9 months. *Id.* Ex. 3 at 2. Ruth Krieger signed the Combined Agreement with the understanding that it would be completed in typed form so that it would be more legible. *Id.* at 60-61. Later, Shasta filled in the Combined Agreement ("Completed Combined Agreement") and included a valuation limit of $50,000. Sloan Aff. Ex. D.

In late July 1999, Ruth Krieger told Shasta to transport their property from the California storage facility to Minnesota to be in their new home on August 12. RK Dep. at 30. The goods were not delivered to Minnesota by August 12. RK Aff. ¶ 14. On August 17, Shasta informed the Kriegers that their property was completely destroyed by fire en route to Minnesota. *Id.* ¶ 15. The moving truck caught fire in Nevada on August 16. Mracheck Aff. Ex. F.

In September 1999, Shasta informed the Kriegers that some of their property was not included in the ill-fated truck and was being sent to Minnesota. RK Aff. ¶ 16. When those few

possessions finally arrived, some were damaged. *Id.* ¶ 17. Shasta's insurance carrier later issued a $50,000 check to the Kriegers. *Id.* ¶ 18. On January 20, 2000, the Kriegers filed the instant action against Shasta and Atlas, alleging breach of contract, fraud in the inducement, conversion and violations of the ICC Termination Act of 1995 (49 U.S.C. §§ 13701-14706) and the California Consumers Legal Remedies Act ("CCLRA").

## III. DISCUSSION

Shasta's summary judgment motion is two-fold. First, it asks for summary judgment of the state law claims based on preemption by federal law. Second, it avers that the remaining federal claim should be dismissed for failure to comply with claim filing requirements and valuation limits agreed upon in the bill of lading.

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be awarded if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In a Rule 56 motion, the moving party "bears the initial burden of proving that summary judgment is appropriate." *Hanson v. FDIC,* 13 F.3d 1247, 1253 (8th Cir. 1994) (citations omitted). A movant "must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with regard thereto" when asking for summary judgment based upon an affirmative defense on which they will bear the burden at trial. *Rushing v. Kansas City S. Ry.*, 185 F.3d 496, 507 (5th Cir. 1999); *cf. Herndon v. Mass. Gen. Life Ins. Co.*, 28 F.Supp.2d 379, 382 (W.D. Va. 1998) (quoting 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.13[1] (3d ed. 1983)) (For a defendant to prevail on a summary judgment motion based on an affirmative defense, the defendant must . . .

adduce evidence which supports the existence of each element of its affirmative defense, and the evidence must be 'so powerful that no reasonable jury would be free to disbelieve it.'"). Once the movant meets the appropriate burden, the nonmovant must expressly set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986). In a summary judgment motion, the evidence is viewed "in the light most favorable to the nonmoving party". *Dush v. Appleton Elec. Co.*, 124 F.3d 957, 962-63 (8th Cir. 1997) (citations omitted).

**B. Preemption of State Law Claims**

Shasta claims that the Kriegers' state law claims should be dismissed because they are preempted by the Carmack Amendment. For decades, the Carmack Amendment, 49 U.S.C. §§ 10101-16106, has regulated the liability of common carriers engaged in interstate commerce. *See In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). The Supreme Court has held that the Carmack Amendment preempts "all the regulations and policies of a particular state upon [this] subject . . . ." *See Adams Express Co. v. Croninger*, 226 U.S. 491, 506 (1913); *accord Fulton v. Chicago Rock Island & Pac. R.R.*, 481 F.2d 326, 331 (8th Cir. 1973); *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 306-7 (5th Cir. 1993); *Paulson v. Greyhound Lines, Inc.*, 628 F.Supp. 888, 892 (D. Minn. 1986).

The Kriegers aver that the Carmack Amendment does not apply here because the facts of the case raise a question as to whether the possessions ever crossed a state line. This fact issue is of no legal significance. The Carmack Amendment applies to *contracts* for the interstate transportation of goods. *Adams*, 266 U.S. at 499. It is undisputed that the parties agreed to transport the goods interstate. As a result, the Carmack Amendment applies to the Kriegers'

claims and preempts any state causes of action. *See Alessandra v. Mullen Bros., Inc.*, No. 98-5967, 1999 WL 959684, at *2-5 (Mass. Super. Ct. Sept. 22, 1999). Shasta's Summary Judgment Motion is granted as to the claims for breach of contract, fraud in the inducement, conversion and violation of the California Consumers Legal Remedies Act.

## C. Carmack Claim

Shasta asks for summary judgment of the Carmack claim for two reasons. First, Shasta asserts that its liability is limited by the bill of lading to $50,000, an amount they have already paid. Second, it avers that the federal claim is barred because the Kriegers failed to file a proper claim with Shasta as required by federal law.

### 1. Bill of Lading

Under federal law, a carrier transporting goods interstate must provide the shipper (sender) of the goods with a bill of lading. 49 U.S.C. 14706(a)(1). The two parties disagree as to whether a valid bill of lading was issued in this case. Federal regulations specify what must be contained in a proper bill of lading. "Every motor common carrier shall issue a receipt or bill of lading for property tendered for transportation in interstate or foreign commerce containing the following information: (a) Names of consignor and consignee; (b) Origin and destination points; (c) Number of packages; (d) Description of freight; (e) Weight, volume, or measurement of freight (if applicable to the rating of the freight)." 49 C.F.R. § 373.101. Furthermore, "every motor common carrier engaged in the transportation of household goods . . . shall issue a receipt or bill of lading" containing the following "minimum information":

(1) The name and address of the motor carrier issuing the receipt or bill of lading.

> (2) The names and addresses of any other motor carriers, when known, which will participate, through interline, in the transportation of the shipment. (3) The name, address and telephone number of the office of the carrier that should be contacted in relation to the transportation of shipments. (4) When the transportation is to be performed on a collect on delivery basis, the name, address and, if furnished, the telephone number of a person to whom notification provided for in § 375.9(b) shall be given. (5) When the transportation is to be performed for an individual shipper, and except when the transportation is to be performed subject to tariff provisions providing for guaranteed service dates, the agreed date or period of time for pickup of the shipment and the agreed date or period of time for the delivery of the shipment. The agreed dates or periods of time for pickup and delivery entered on the receipt or bill of lading shall conform to the agreed dates or periods of time for pickup and delivery entered on the order for service or a proper amendment to the order for service. (6) When the transportation is to be performed subject to tariff provisions providing for guaranteed pickup, transportation and delivery service, the dates for pickup and delivery and any penalty or per diem entitlements due the shipper under the agreement. (7) The actual date of pickup. (8) The company or carrier identification number of the vehicle on which the shipment is loaded. (9) The terms and conditions for payment of the total charges including notice of any minimum charges. (10) When the transportation is to be performed on a collect on delivery basis and if a pre-move estimate of the charges is provided to the shipper, the maximum amount required to be paid at the time of delivery to obtain delivery of the shipment. (11) The required released rates valuation statement. (12) Evidence of any insurance coverage sold to or procured for the shipper, including the amount of the premium for such insurance.

49 C.F.R. § 375.6. A bill of lading is a contract that is analyzed under principles of contract. *Binladen BSB Landscaping v. M.V. "Nedlloyd Rotterdam"*, 759 F.2d 1006, 1012 (2d Cir. 1985).

Because the bill of lading is being used as an affirmative defense, Shasta has the burden of proving its existence and its terms. *See Carmana Designs Ltd. v. N. Am. Van Lines, Inc.*, 943 F.2d 316, 319-20 (3d Cir. 1991); *Ford Motor Co. v. Trans. Indem. Co.*, 795 F.2d 538, 547 (6th Cir. 1986) (Claim filing limitation in bill of lading is affirmative defense); *Lux Art Van Serv., Inc. v. Pollard*, 344 F.2d 883, 887 (9th Cir. 1965) (Damage limitation in bill of lading is an affirmative defense). Thus, to warrant summary judgment based upon this affirmative defense,

Shasta "must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with regard thereto." *See Rushing v. Kansas City S. Ry.*, 185 F.3d 496, 507 (5th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**2. Claim Filing Limitation**

Shasta's first affirmative defense is that the Kriegers did not file a claim specifically outlining their damages within nine months as required. The Carmack Amendment allows carriers and shippers to agree in a bill of lading that the shipper must file any damage claim *with the carrier* within a specified time (no shorter than nine months) from the transportation. 49 U.S.C. § 14706(e). Federal regulations necessitate that the claim contain an allegation of a specific monetary damage amount. 49 C.F.R. § 1005.2. Although no document in the transaction is titled as a "bill of lading", Shasta asserts that the Estimate, Combined Agreement and Shasta Inventory merge to form a bill of lading requiring that the Kriegers file a liability claim asserting specific damage amount within nine months.

The position assumes there is a contract or bill of lading requiring the Kriegers to submit a claim within nine months. Shasta has not produced a bill of lading, receipt, or even a combination of documents that contains the information required by federal regulations. 49 C.F.R. §§ 373.101, 375.6. Even assuming that it is proper to aggregate multiple documents to create a bill of lading, some of the requisite information is not found anywhere in the Estimate, Combined Agreement, Completed Combined Agreement or Shasta Inventory. RK Dep. Ex. 1, 2, 3; Sloan Aff. Ex. D. For example, these documents fail to specify the final destination (Minnesota) and the company or carrier identification number of the shipment vehicle. The *only* items filled out in the entire Combined Agreement when signed by Ruth Krieger were the pickup

point (the Kriegers' California home) and destination, listed as "Shasta Transfer" in Redding, CA. RK Dep. Ex. 3. This is insufficient to prove a valid bill of lading.

Additionally, the Combined Agreement, which contains the nine month claim limitation, facially applies only to the shipment from the Kriegers' home to storage in California. *Id.* The destination is listed as the Shasta storage facility, not Minnesota. In later completing the Completed Combined Agreement form, Shasta outlined the costs of the move. The document includes only those charges for the move from the Kriegers' California home to the storage facility and storage costs. Sloan Aff. Ex. D. The damage to the Kriegers' property did not occur on this move; it occurred in Nevada five months later while the goods were in transit from storage to Minnesota. Shasta's own document, the Completed Combined Agreement, fails to contain, or even allude to, the charges for transport to Minnesota. *Id.* Thus, the only document containing a claim filing requirement is inapplicable to the move from the storage facility to Minnesota. Because there was no applicable bill of lading requiring that the Kriegers file a claim, any failure to allege a specific damage amount in the claim is irrelevant. Shasta's motion to bar the Carmack claim on the basis of a claim filing deadline is denied.

**D. Valuation Limitation**

Because Shasta has paid the Kriegers $50,000, it argues that the Carmack claim should be barred by the parties' agreement in the bill of lading to limit damage claims to that amount. The $50,000 valuation limitation language is present only in the unsigned Estimate and the Completed Combined Agreement. Sloan Aff. Ex. D. When Ruth Krieger signed the Combined Agreement, the limitation was not specified in the document. RK Dep. Ex. 2. The valuation limitation was added *after the fact* by Shasta. While Shasta alleges this was consensual, the

Kriegers maintain that they did not agree or intend that any valuation limitation be included in the Combined Agreement. RK Aff. ¶¶ 7, 9. This factual dispute renders summary judgment inappropriate.

Furthermore, as discussed above, the Combined Agreement and the Completed Combined Agreement apply only to the move from the Kriegers' California home to the Shasta storage facility. RK Dep. Ex. 2; Sloan Aff. Ex. D. As a result, the limitation contained in the Completed Combined Agreement, even if agreed to by the Kriegers, appears to apply to claims resulting from the move to the storage facility. The damage occurred while being transported from the storage facility to Minnesota. This is an alternative ground for denying summary judgment.

Finally, for a carrier defendant to limit liability under the Carmack Amendment, the carrier must have "obtained plaintiffs' agreement as to their choice of liability; provided plaintiffs a reasonable opportunity to choose between two or more levels of liability; and issue[d] a receipt or bill of lading prior to the shipment." *Nelson v. Bekins Van Lines Co.*, 779 F.Supp. 122, 125 (D. Minn. 1991); *see* 49 U.S.C. § 14706(c)(1); *accord Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1063 (7th Cir. 2000). Without a proper bill of lading, a shipper cannot limit his Carmack liability. *See Nelson*, 779 F.Supp. at 125; *Opp*, 231 F.3d at 1063. To limit liability, the onus is on the carrier to establish these pertinent facts. *See Carmana Designs Ltd. v. N. Am. Van Lines, Inc.*, 943 F.2d 316, 319-20 (3d Cir. 1991).

Even assuming the Kriegers agreed to the valuation limitation and that the Completed Combined Agreement applied to the move from storage to Minnesota, Shasta has failed to prove that it provided a bill of lading to the Kriegers that meets federal regulatory requirements. As a

result of the incomplete information contained in the documents presented to the Kriegers, Shasta has not met its burden of proving that it issued a proper "bill of lading." *See* RK Dep. Ex. 2; Sloan Aff. Ex. D; C.F.R. §§ 375.6, 373.101. There are also questions of fact as to whether or not Shasta "obtained plaintiffs' agreement as to their choice of liability [and] provided plaintiffs a reasonable opportunity to choose between two or more levels of liability," as is required to limit its Carmack liability. *See* 779 F.Supp. at 125; 231 F.3d at 1063. Summary judgment on the Carmack claims due to an agreed upon damage limitation is denied.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Summary Judgment Motion [Doc. No. 19] is **GRANTED** as to Plaintiffs' claims for breach of contract, fraud in the inducement, conversion and violation of the California Consumers Legal Remedies Act.

2. Defendant's Summary Judgment Motion [Doc. No. 19] is **DENIED** as to Plaintiffs' federal Carmack claim.

BY THE COURT:

[signature]

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: February 16, 2001